UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| REBECCA LOUIS, | ) | |
| | ) | Case No: |
| | ) | |
| Plaintiff, | ) | Judge: |
| | ) | |
| v. | ) | Magistrate Judge: |
| | ) | |
| RES-CARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT[1]

Plaintiff, REBECCA LOUIS ("MS. LOUIS"), by and through her undersigned counsel, hereby files this Complaint and sues RES-CARE, INC. ("RES-CARE") for reinstatement, damages (compensatory, two times back pay, and nominal), and attorneys' fees and costs pursuant to the False Claims Act, 31 U.S.C. § 3730(h), Relief From Retaliatory Actions. MS. LOUIS managed a group home for the Intermediate Care Facilities for Individuals with Intellectual Disabilities that was operated by Defendant and, upon information and belief, received federal funds, either through Medicare or Medicaid, either directly or indirectly. As is set forth below, Defendant terminated MS. LOUIS following her internal compliant and grievances concerning the fabrication of time sheets and violations of Centers for Medicare & Medicaid Services ("CMS") requirements. Through said retaliation, RES-CARE violated § 3730(h) of the False Claims Act.

## JURISDICTION AND PARTIES

1.      This is an action for reinstatement, damages (compensatory, two times back pay, and

---

[1] Plaintiff solely sues under § 3730(h). Plaintiff does not sue under § 3730(b). As such, this action is not subject to the sealing requirement of § 3730(b). See *U.S. ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 1000 (2d Cir.1995) ("Section 3730(h) retaliation claims, unlike § 3730(b) qui tam claims, are not subject to the procedural requirements of § 3730(b)(2)[.]").

nominal), and attorneys' fees and costs declaratory and injunctive relief pursuant to the False Claims Act, 31 U.S.C. § 3730(h), Relief From Retaliatory Actions.

2.  This Court is vested with original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to section 3730(h) of the False Claims Act.

3.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Louisiana.

4.  MS. LOUIS is a person of the age of majority and a citizen of the State of Louisiana.

5.  MS. LOUIS resides in St. Mary Parish on St. John Street, Franklin, Louisiana.

6.  At all relevant times, RES-CARE has continuously been doing business in the State of Louisiana and the Parish of St. Mary, and has, upon information and belief, received federal funds from the U.S. government either directly or indirectly through Medicare or Medicaid.

## FACTS

7.  MS. LOUIS is a Louisiana resident and has worked in the healthcare industry since January 2000.

8.  On January 1, 2024, MS. LOUIS was hired by Defendant as a Direct Support Professional. MS. LOUIS attended work regularly and received no complaints or write-ups prior to the incidents and retaliation at issue in this case.

9.  In September of 2024, MS. LOUIS was certified as a medication passer. MS. LOUIS began administering medication in addition to her previous duties.

10. On January 1, 2025, MS. LOUIS was promoted to Site Supervisor at the Sugarmill Group Home (hereinafter "Sugarmill") and worked shifts as necessary.

11. Sugarmill is located at 2201 Old Sugar Mill Road, New Iberia, Louisiana 70560.

12.  Sugarmill is a group home under CMS regulations and requirements for Intermediate Care Facilities for Individuals with Intellectual Disabilities. In short, at Sugarmill, Defendant provided group home care, which included medical care such as medication administration, provision of a residence, food and bathing, cleaning residents, etc., all on behalf of individuals with intellectual disabilities, physical disabilities, or decreased function due to age.

13.  Upon information and belief, a facility operating a group home that is a regulated Intermediate Care Facilities for Individuals with Intellectual Disabilities must comply with the CMS regulations to be eligible for federal funds.

14.  Among other requirements, the CMS regulations require that:

    a.  That a facility must "[e]nsure that clients are not subjected to physical, verbal, sexual or psychological abuse or punishment" *See* 42 C.F.R. § 440.420(5).

    b.  The facility must have a direct care staff member on duty and awake on a 24-hour basis when clients are present. *See* 42 C.F.R. § 483.430(c)(2).

    c.  Each patient shall receive a "nourishing, well-balanced diet including modified and specially-prescribed diets[,]" 42 C.F.R. § 483.480(a)(1), and food must be served in an "appropriate quantity[.]" 42 C.F.R. § 483.480(b)(1).

    d.  That a facility must provide "[h]ome health aide service", which includes orders written by a physician, nurse practitioner, clinical nurse specialist or physician assistant. See 42 C.F.R. § 440.70 (a)(2).

    e.  That a facility must provide "[h]ome health aide service". See 42 C.F.R. § 440.70 (b)(2).

3

15.  Upon information and belief, Defendant received federal funds, directly or indirectly, through Medicare or Medicaid reimbursement related to the residents who resided at Sugarmill.

16.  In February of 2025, MS. LOUIS became concerned with the conduct of her subordinate, Ms. Myia Bogan.

17.  MS. LOUIS submitted a complaint, staff development forms, and evidence to her area coordinator, Ms. Yoland Polk in regard to Ms. Bogan job performance.

18.  MS. LOUIS documented that Ms. Bogan was engaged in unsafe and improper handling of patients, was sleeping on the job, had not been completing tasks, and poor job performance.

19.  On March 22, 2025, MS. LOUIS redirected Ms. Bogan after Ms. Bogan broke into a supply closet with a knife.

20.  Ms. Bogan retaliated against MS. LOUIS by making a report that MS. LOUIS and another co-worker (Almerta Alexander) had abused clients.

21.  On or about March 24, 2025, Defendant began an investigation into MS. LOUIS.

22.  MS. LOUIS submitted a written statement.

23.  Over the course of the approximate six-day investigation, MS. LOUIS was required to submit a "revised" statement or she would not be permitted to return to work.

24.  Under the revised statement, MS. LOUIS had to remove, "witnessing Mya Bogan yelling and screaming at clients (NAMES REDACTED)", from her original statement.

25.  On March 29, 2025, having submitted the revised statement, MS. LOUIS was permitted to return to work.

26.  MS. LOUIS had to sign a staff development form but never received any formal

notification of what she did "wrong."

27.     In April of 2025, Defendant hired employee Ciara Nora.

28.     Ms. Ciara Nora quickly engaged in various misconduct.

29.     Ms. Nora presented ongoing issues with tardiness, incomplete documentation, sleeping on the job, not performing patient care, and safety violations. MS. LOUIS reported Ms. Nora to the area coordinator, Ms. Yolanda Polk.

30.     On May 19, 2025, MS. LOUIS identified that Ms. Nora had engaged in falsification of time sheets. Specifically, MS. LOUIS determined that Ms. Nora falsified her arrival time.

31.     MS. LOUIS relayed her concerns to her area supervisor, Ms. Yolanda Polk. No disciplinary actions were taken against Ms. Nora.

32.     On or about June 1 or 2, MS. LOUIS received notice that residents were being fed a nominal and wholly insufficient meal by Ms. Nora, as was documented by other direct care staff member, Alemtra Alexander.

33.     On June 1, 2025, Ms. Nora attempted to leave her shift without changing four residents. A co-worker of Ms. Nora pushed back, and Ms. Nora yelled at this co-worker.

34.     That evening, MS. LOUIS attempted to learn what had happened earlier in the day. During the conversation, Ms. Nora laughed at MS. LOUIS' statement that residents needed to be checked and changed prior to entering or leaving a shift. MS. LOUIS told Ms. Nora that she was going to refer Ms. Nora to Ms. Polk given Ms. Nora's unprofessional demeanor.

35.     Upon information and belief, Ms. Nora secretly recorded a portion of the conversation.

36.     On June 2, 2025, Ms. Yolanda Polk advised MS. LOUIS that Ms. Nora had provided a recording of the prior conversation. Ms. Polk advised MS. LOUIS that MS. LOUIS did

nothing wrong.

37.  On June 3, 2025, MS. LOUIS was suddenly pulled off her shift.

38.  On June 9, 2025, MS. LOUIS met with Ms. Polk's supervisor, Ms. Jennifer Simon.

39.  During that meeting, MS. LOUIS advised Ms. Simon about Ms. Nora's various misconduct, including falsification of time records, tardiness, incomplete documentation, sleeping on the job, not performing patient care, and safety violations. During that said meeting, MS. LOUIS supplied documentation regarding these allegations to Ms. Simon.

40.  During that meeting, Ms. Simon stated that the recording of Ms. Nora had been edited. Nonetheless, Ms. Simon advised that she did not see anything problematic in the recording.

41.  On June 12, 2025, MS. LOUIS was unexpectedly removed from her supervisor role.

42.  On June 17, 2025, MS. LOUIS received a phone call from human resources. MS. LOUIS was advised that she had been terminated for "verbal abuse."

43.  On June 25, 2025, MS. LOUIS spoke with Ms. Sara Smothers concerning the apparent retaliation of her firing after raising concerns about abuse and misconduct at Sugarmill. Ms. Smothers assured MS. LOUIS that she would "look into" the situation.

44.  MS. LOUIS received no response.

45.  MS. LOUIS then contacted Mr. Bob Barns (President of ResCare Community Living) expressing her concerns on this matter.

46.  After contacting Mr. Barns about this matter, he communicated with Ms. Sara Smothers. Ms. Smothers then assured Ms. LOUIS that an internal investigation of the matter would be conducted.

47.  On July 9, 2025, MS. LOUIS submitted a formal complaint, timeline, and documentation

concerning her termination and her concern that she was a victim of retaliation.

48.    In her written correspondence, MS. LOUIS noted the various patient-related misconduct, the falsification of time records, and the other misconduct detailed above. MS. LOUIS also supplied various documentary materials per Ms. Smothers' request.

49.    MS. LOUIS submitted the requested information. July 25, 2025 was the last communication MS. LOUIS received concerning the internal investigation.

50.    Over the next few weeks, MS. LOUIS sent several follow-up inquiries as to the status of the investigation. MS. LOUIS never received any response.

51.    At no point was an explanation provided to MS. LOUIS as to when she allegedly engaged in "verbal abuse" or who she allegedly "abused."

52.    A no point was MS. LOUIS reinstated as an employee.

53.    The final confirmation MS. LOUIS received was a letter from an employee of Defendant threatening legal action against MS. LOUIS if she did not delete materials possessed by MS. LOUIS.

**CLAIM FOR RELIEF - 31 U.S.C. § 3730(h)**

54.    Based on the facts alleged above, Defendant violated 31 U.S.C. § 3730(h).

55.    MS. LOUIS engaged in an activity protected by § 3730(h).

56.    In May through June of 2025, MS. LOUIS reported employees Bogan and/or Nora for conduct that is prohibited by CMS regulations,  including mistreatment (§ 440.420(5)), sleeping on the job (§ 483.430(c)(2)), inadequate nutrition (§ 483.480(a)(1) and (b)(1)), and failing make reports related to patient care (§ 440.70(a)(2)),

57.    MS. LOUIS also made reports related to falsification of time records and Ms. Bogan

breaking into a file cabinet in front of clients. The former would result in improper reimbursement to RES-CARE.

58. MS. LOUIS' reports of violations of conduct regulated by CMS and the falsification of records constituted an activity motivated by a concern regarding fraud against the government.

59. On July 9, 2025, MS. LOUIS submitted a formal complaint, timeline, and documentation concerning her termination and her concern that she was a victim of retaliation. This grievance was made, in part, out of concern regarding fraud against the government.

60. Defendant received MS. LOUIS' reports and her formal complaint. As such, Defendant knew that MS. LOUIS was engaged in a protected activity.

61. MS. LOUIS was terminated after she engaged in protected activities. Additionally, she was not re-hired, and instead was threatened with legal action, following her formal complaint on July 9, 2025.

62. There was a causal relationship between MS. LOUIS' protected activity and the adverse action against her. *Evans v. City of Houston,* 246 F.3d 344, 354 (5th Cir.2001) (stating that close timing between an employee's protected activity and the adverse employment action can provide evidence sufficient to satisfy the causal connection for summary judgment purposes).

63. Based on the facts alleged above, a reasonable jury could conclude that Defendant terminated MS. LOUIS because she was repeatedly raising the alarm about patient care, mistreatment, falsification of time records, and medication misuse.

64. As a result of the retaliation and termination at issue in this case, MS. LOUIS suffered

damages including: (1) emotional distress and mental anguish; (2) backpay and future pay; and (3) reputational harm.

65.     In addition to said compensatory damages, MS. LOUIS seeks two (2) times the amount of backpay, interest on her backpay, and nominal damages. MS. LOUIS further seeks reinstatement.

66.     Finally, MS. LOUIS seeks recovery of reasonable attorneys fees/costs, including expert fees, in litigating the instant case.

## **DEMAND FOR JURY TRIAL**

67.     MS. LOUIS demands trial by jury on all issues.

## **PRAYER FOR RELIEF**

WHEREFORE, MS. LOUIS prays that this Court:

A.     Grant reinstatement in favor of MS. LOUIS.

B.     Order RES-CARE to make whole MS. LOUIS by providing appropriate backpay with prejudgment interest, and future pay, all in amounts to be determined at trial;

C.     Awarding damages to MS. LOUIS, including for compensatory damages, two (2) times the amount of backpay, interest on her backpay, and nominal damages.

D.     Order RES-CARE to pay reasonable attorneys' fees, costs, and litigation expenses.

E.     Order RES-CARE to pay interest on all amounts, at the highest rates and from the earliest dates allowed by law; and

F.      Grant any and all other equitable or legal relief that this Court finds necessary and appropriate.


Dated: September 26, 2025


                                    Respectfully Submitted,


                                    **BIZER & DᴇREUS, LLC**
                                    *Attorneys for Plaintiff*

                                    /s/ Garret S. DeReus_____

                                    ANDREW D. BIZER (LA # 30396)
                                    GARRET S. DᴇREUS (LA # 35105)
                                    EVA M. KALIKOFF (LA # 39932)
                                    3319 St. Claude Ave.
                                    New Orleans, LA 70117
                                    T: 504-619-9999; F: 504-948-9996
                                    Email: andrew@bizerlaw.com
                                            gdereus@bizerlaw.com
                                            eva@bizerlaw.com